# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DANIEL ARMENI, <br><br> *Plaintiff,* <br><br> v. <br><br> TRANS UNION LLC, INC., *ET AL.*, <br><br> *Defendants.* | CASE NO. 3:15–cv–00066 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This case is before the Court upon Plaintiff Daniel Armeni's ("Armeni") motion for entry of default judgment (Docket No. 26) and Defendant BSI Financial Services, Inc.'s[1] ("BSI") motion to vacate entry of default, grant enlargement and leave to file a responsive pleading, and oppose entry of default judgment (Docket No. 33). Because Defendant has failed to show insufficient process or demonstrate the requisite good cause to set aside entry of default, and Plaintiff has pled sufficient facts to support his claims, I will deny BSI's motion and grant Armeni's motion.

## I.  BACKGROUND

This case arises out of purported violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. Armeni instituted this action on November 19, 2015. In his complaint, Armeni alleged various claims against Trans Union, LLC ("Trans Union"), Experian

---

[1] Defendant claims in its memorandum in support of its motion (Docket No. 33-2) that its proper legal name is "Servis One, Inc.," and that "BSI Financial Services, Inc." is a fictitious name under which it operates. However, I will refer to Defendant as "BSI" because that is how Defendant is named in the complaint.

Information Solutions, Inc. ("Experian"), and BSI.[2]

## A. FACTS AS ALLEGED

### 1. Initial Consumer Credit Report Errors

Armeni alleges that, in June 2014, he obtained copies of his credit report from Trans Union and Experian, two companies which produce consumer credit reports. In so doing, he discovered that these companies inaccurately represented his credit information. (Compl. ¶¶ 10, 23). In particular, Armeni's credit report with Trans Union stated that he was $56,000 past due on a mortgage account with BSI, a loan servicing company. *Id.* ¶ 11. According to his complaint, the home subject to this mortgage was foreclosed upon in August 2013. Subsequently, the home was put up for sale. Armeni states that the "home sold for approximately $526,000, which was $10,000.00 more than the amount owed . . . on the loan." *Id.* ¶ 12. Armeni's credit report from Experian "was double reporting the foreclosure of the BSI account, creating the appearance that two different foreclosures occurred—one in August 2013 and one in September 2014." *Id.* ¶ 24.

### 2. Armeni's Dispute Letters

Armeni claims that he sent a dispute letter to Trans Union on or around June 11, 2014, alleging that the company inaccurately reported information regarding the BSI mortgage account. (Compl. ¶ 13). The letter stated that he did not owe any past balance on the mortgage "as BSI had been paid in full after the August 2013 foreclosure sale." *Id.* Trans Union subsequently investigated the BSI account and provided their investigation results to Armeni. After this investigation, Trans Union updated Armeni's credit profile to show that he owed a balance of $0 on the BSI account, but nonetheless verified the inaccurate information that the

---

[2] On March 9, 2016, I ordered all claims against Trans Union to be dismissed with prejudice as the parties had come to an agreement. (Docket No. 19). On May 20, 2016, Armeni moved to voluntarily dismiss all claims against Experian. (Docket No. 25). This motion was granted by my order on June 21, 2016 (Docket No. 29), leaving only Armeni's claims against BSI.

2

account had "settled for less than the full balance." *Id.* ¶¶ 15, 19. Afterward, Armeni contacted the Consumer Financial Protection Bureau ("CFPB"), notifying the CFPB of Trans Union's supposed inaccurate reporting. In response to his complaint to the CFPB, Trans Union removed the inaccurate information on September 12, 2014. However, Trans Union subsequently reinstated this information. *Id.* ¶¶ 17-19.

### 3. BSI's Reporting and Investigation

Armeni further alleges that when credit reporting agencies like Trans Union and Experian receive consumer disputes, they translate them into Automatic Consumer Dispute Verification ("ACDV") forms using a dispute system called "e-Oscar." (Compl. ¶¶ 60-61). "[T]he ACDV form is the method by which BSI has elected to receive consumer disputes." *Id.* ¶ 62. Armeni claims that BSI received such a report from Trans Union after he sent a dispute letter to the credit reporting agency. *Id.* ¶ 65.

According to Armeni, BSI does not engage in a substantive investigation of consumer credit disputes. Instead, BSI only reviews "its own internal computer screen for the account and repeats back to the ACDV system the same information that BSI had already reported to the [credit reporting agencies]." *Id.* ¶ 67. According to Armeni, BSI knew that his account had been paid in full, but reported otherwise to Trans Union. Additionally, BSI failed to note that Armeni's account was disputed despite the fact that Armeni "had previously disputed the debt directly to BSI on numerous occasions." *Id.* ¶ 86.

### B. PROCEDURAL HISTORY

On December 18, 2015, the Secretary of the Commonwealth of Virginia filed a certificate of compliance (Docket No. 5) demonstrating service of process upon BSI. On this occasion, Armeni's complaint and summons were sent to 3001 South Lamar, Suite 320, Austin,

Texas 78704. *Id.* After BSI did not file a responsive pleading, Armeni attempted service upon BSI twice more. Certificates of compliance for these service attempts were filed on January 21, 2016, and February 8, 2016, respectively. (Docket Nos. 16, 18). In the second instance, the complaint and summons were addressed to 1425 Greenway Drive, Suite 400, Irving, Texas 75038, while on the third occasion, such documents were mailed to 350 N. Saint Paul St., Dallas, Texas 75201-0000. *Id.*

On March 17, 2016, Armeni moved for entry of default against BSI. (Docket No. 20). Default was entered by the clerk the following day. (Docket No. 21). Later, on June 7, 2016, Armeni moved for entry of default judgment. (Docket No. 26). Subsequently, on June 20, 2016, BSI filed a notice of appearance. (Docket No. 28).

On June 28, 2016, BSI filed its motion to set aside entry of default, grant enlargement of time and leave to file a responsive pleading, and oppose Armeni's motion for default judgment. (Docket No. 33). Oral argument on the motions was held on July 25, 2016.

## II. STANDARD OF REVIEW

Ordinarily, a defendant is required to serve an answer or some other responsive pleading "within 21 days of being served with [a] summons and complaint." Fed. R. Civ. P. 12; *King v. Flinn & Dreffin Engineering Co.,* No. 7:09–cv–00410, 2012 WL 4459568, at *2 (W.D. Va. May, 16, 2012). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a party has moved for default judgment, "a court may either grant the motion pursuant to Rule 55(b)(2), or set aside the entry of default for good cause pursuant to Rule 55(c)." *Red Light Management, Inc. v. Dalton*, No. 3:15-cv-00051, 2016 WL 1337329, at *3 (W.D. Va. Apr. 5, 2016). In determining whether or not a defaulting

4

party has demonstrated sufficient good cause to set aside an entry of default:

> a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

*Mavila v. Absolute Collection Service, Inc.*, 539 Fed. App'x 202, 204-05 (4th Cir. 2013) (quoting *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006)).

### III. DISCUSSION

A. <u>BSI'S MOTION TO VACATE DEFAULT, GRANT ENLARGMENET AND LEAVE TO FILE A RESPONSIVE PLEADING, AND OPPOSE ENTRY OF DEFAULT JUDGMENT</u>

BSI's argument to set aside entry of default has two strands. First, BSI argues that it was improperly served Armeni's complaint and summons. Second, BSI argues that it can show the requisite good cause to vacate an order of default.

1. <u>Improper Service of Process</u>

"[W]hen service of process is ineffective a court does not acquire personal jurisdiction over a party, and a default judgment resulting from such defective service is void." *Capital Concepts Inc. v. CDI Media Grp. Corp.*, No. 3:14–cv–00014, 2014 WL 3748249, at *4 (W.D. Va. July 29, 2014) (quoting *Bank United v. Hamlett*, 286 B.R. 839, 743 n.3 (W.D. Va. 2002)). "However, returns of service of process . . . act as *prima facie* evidence of valid service." *Id.* In such a case, a defendant must "at the very least, present credible evidence to rebut the presumption of validity." *Id.* Furthermore, a bare assertion by a defaulting party that he or she was improperly served does not countervail a showing of return of service. *Id.*

In the present case, BSI acknowledges that, according to the case docket, Armeni served his complaint and summons upon the Secretary of the Commonwealth of Virginia, who acts as

5

the statutory agent for service of process purposes, on three separate dates. Additionally, BSI admits the docket shows that on three separate occasions certificates of compliance were filed. (Docket No. 33-2, at 2-3).

Nonetheless, BSI argues that service of process on each occasion was defective and that it never received Armeni's complaint and summons. BSI asserts that the complaint and summons were sent to incorrect addresses. *Id.* According to the case docket, these documents were mailed to three different addresses: 3001 South Lamar, Suite 320, Austin, Texas 78704; 1425 Greenway Drive, Suite 400, Irving, Texas 75038; and 350 N. Saint Paul St., Dallas, Texas 75201-0000, with certificates of compliance filed on December 18, 2015; January 21, 2016; and February 8, 2016, respectively. (Docket Nos. 5, 16, 18). On brief, BSI contends that their proper address for service of process purposes is 815 Brazos Street, Suite 500, Austin, Texas 78701. (Docket No. 33-2, at 4). BSI also claims that they were on each occasion improperly named. BSI alleges that their legal name is "Service One, Inc." Each complaint instead names them as "BSI Financial Services, Inc." *Id.*

However, BSI's argument that it was improperly served fails. Armeni has provided documentation showing that BSI's listed address for service of process purposes is the 350 N. Saint Paul St., Dallas, Texas 75201-0000 address to which Armeni's complaint and summons were sent on or about February 8, 2016. (Docket No. 34-1). Further, BSI conceded at oral argument that this address is proper. Armeni has also provided a document showing a history of suits against BSI which name them as BSI Financial Services, Inc., and not Servis One, Inc.[3]

---

[3] What is more, the letter Trans Union sent to Armeni detailing its investigation results (Docket No. 27-1) and Armeni's credit report (Docket No. 27-3) identify Defendant only as "BSI Financial Services" or "BSI Financial Services, Inc." There is no indication in these documents that Defendant's legal name is "Servis One, Inc." Furthermore, there is no sign on Servis One, Inc.'s registration with the Commonwealth of Virginia State Corporation Commission that the company is operating as BSI Financial Services, a fictitious name. *See* https://sccefile.scc.virginia.gov/Business/F203339.

(Docket No. 34-3).

Moreover, Armeni's service of process was sufficient under Virginia law and Fourth Circuit precedent regardless of BSI's receipt of the complaint and summons. Virginia law permits a plaintiff to execute service of process upon the Secretary of the Commonwealth, who then mails the complaint to the defendant. Va. Code § 8.01-329(c). The Secretary "or someone designated by him for that purpose" is then required to file a certificate of compliance certifying service of process. *Id.* In *Equipment Financial Services, Incorporated v. Traverse Computer Brokers*, the Fourth Circuit held that because the "plaintiff complied with the statutory provisions [of Virginia law] . . . sufficiency of process was not affected by the failed delivery of notice from the Secretary to the putative defendant." 973 F.2d 345, 347 (4th Cir. 1992).

Because BSI cannot show that Armeni's complaint and summons were sent to the wrong address or named the incorrect defendant, and Armeni's service of process was legally sufficient, BSI has failed to demonstrate improper service of process.

2. Good Cause

Apart from a showing of deficiencies in service of process, a court may set aside a default judgment if a defendant can show sufficient good cause. Fed. R. Civ. P. 55(c); *Dalton*, 2016 WL 1337329, at *3.

At oral argument, BSI, citing *Trueblood v. Grayson Shops of Tennessee, Incorporated*, 32 F.R.D. 190 (E.D. Va. 1963), asserted that it was required to show *either* good cause *or* a meritorious defense to set aside entry of default. This is an incorrect statement of law.[4] Whether a defendant has a meritorious defense to a claim is a factor for determining good cause, not a

---

[4] Moreover, this incorrectly states the rule as outlined in *Trueblood*. In that case, the Court held that a demonstration of a meritorious defense was a necessary condition for setting aside entry of default. *Trueblood*, 32 F.R.D. at 195-96 ("Not only must there exist a good reason to set aside the default on the ground of mistake, inadvertence, surprise, or excusable neglect, but the moving party must show that he has a meritorious defense to the action.").

7

separate inquiry. As the Fourth Circuit squarely held in 2006:

> Rule 55 of the Federal Rules of Civil Procedure provides that a court may, "[f]or good cause shown," set aside an entry of default.
>
> . . .
>
> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

*Payne*, 439 F.3d at 204-05 (citations omitted).

    a.  Meritorious Defense

In order to show a meritorious defense, a defendant is required to proffer evidence that would sufficiently support a finding for the party. *Dalton*, 2016 WL 1337329, at *4. "There must be facts to support the defense, not merely conclusory statements." *Id.*

BSI does not plead facts to support any meritorious defense. Instead, it merely states that it "is able to proffer multiple plausible meritorious defenses" if given the opportunity. (Docket No. 33-2, at 12). Because BSI has merely made conclusory statements regarding supposed defenses, this factor counsels against setting aside entry of default.

    b.  Reasonable Promptness

Courts evaluate reasonable promptness based on the facts of each case. *Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*, No. 1:15-cv-1269, 2016 WL 726532, at *6 (E.D. Va. Feb. 22, 2016) (quoting *United States v. Moraldi*, 673 F.2d 725, 727 (4th Cir. 1982)). For instance, courts have considered how long after effective service of process or entry of default it took a defendant to move to set aside default. *See, e.g., Blum v. Fremont Inv. & Loan*, No. WMN-12-57, 2012 WL 2137962, at *2 (D. Md. June 12, 2012); Baker v. Durham Cty. S.W.A.T. Team, No. 1:14-cv-878, 2016 WL 2621972, at *3 (M.D.N.C. May 5, 2016). "[C]ourts routinely

8

Case 3:15-cv-00066-NKM-JCH   Document 37   Filed 07/28/16   Page 8 of 15   Pageid#: 204

look at other courts' decisions to determine whether a delay is reasonable, and district courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside." *Dalton*, 2016 WL 1337329, at *6 (quoting *Burton v. The TJX Cos., Inc.*, No. 3:07-cv-760, 2008 WL 1944033, at *3 (E.D. Va. May 1, 2008)) (internal quotations omitted).

By its own concession, Armeni's third service attempt was directed at BSI's correct address, with the Secretary of the Commonwealth of Virginia filing a certificate of compliance on February 8, 2016. (Docket No. 18). Default was entered against BSI on March 18, 2016, and Armeni motioned for default judgment on June 7, 2016. It is on this date that BSI at oral argument claimed to have received actual notice of the case. BSI did not move to set aside entry of default until July 8, 2016. Consequently, BSI waited 151 days after it was effectively served, 112 days after default was entered, and 31 days after it claims to have received actual notice of the action to move to vacate entry of default.

In light of these time periods, the Court finds that BSI did not act reasonably promptly. This factor accordingly weighs against setting aside entry of default.

    c. <u>Dilatory Action</u>

There is no evidence that BSI has engaged in any sort of dilatory tactics in this case, as it has promptly filed documents after making a notice of appearance. Accordingly, this factor weighs in BSI's favor.

    d. <u>Personal Responsibility</u>

"As a general matter, a defendant is responsible for its own failure to defend a lawsuit." *Mahmoodian v. Pirnia*, No. 3:11–cv–00005, 2012 WL 1997789, at *3 (W.D. Va. June 4, 2012). "In assessing the level of personal responsibility the defendant bears for falling into default, the

9

court should consider the circumstances surrounding the default and whether the default was primarily traceable to the defendant's actions or oversight by their counsel." *Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*, No. 1:15-cv-1269, 2016 WL 726532, at *6 (W.D. Va. Feb. 22, 2016). Adequate service of process is relevant in deeming a defaulting defendant personally responsible for a failure to file a responsive pleading. *Id.* However, a party is not generally responsible for the failures of its counsel. *Mahmoodian*, 2012 WL 1997789, at *3. "Of all [the] factors [for good cause], the personal responsibility of the movant has received particular consideration." *S.C. Nat. Bank v. Baker*, 941 F.2d 1207 (4th Cir. 1991) (unpublished).

In the present case, BSI blames its failure to file a responsive pleading on ineffective service of process. However, as discussed above, service was proper, thus raising an inference that BSI was, in fact, personally responsible for its failure to defend. BSI has accordingly failed to meet this factor.

  e. <u>Prejudice</u>

"In determining whether a party was prejudiced by a default, a court considers: (1) whether the delay made it impossible for the aggrieved party to present certain evidence; (2) whether the delay hampered the non-defaulting party's ability to proceed with trial; (3) whether the delay impaired the non-defaulting party's ability to complete discovery; and (4) whether the delay was used by the defaulting party to commit a fraud." *Dalton*, 2016 WL 1337329, at *7.

At oral argument, Armeni claimed that the delay in BSI's responsive pleading injured his ability to present expert testimony. Pursuant to this case's pretrial order of March 30, 2016 (Docket No. 23), Armeni had 75 days from the date of the order to disclose a written list of his expert witnesses. Because this period elapsed on June 13, 2016, Armeni argues that he is now unable to proffer such evidence.

10

Any actual prejudice stemming from BSI's delay can be mitigated to a certain extent. The pretrial order allows the Court to permit written disclosure of expert witnesses past the 75-day deadline if "the court otherwise directs." *Id.* ¶ 18. Accordingly, BSI's delay does not make it impossible for Armeni to present evidence.

On the other hand, fixing this issue by an extension would hamper Armeni's ability to expeditiously proceed to trial, which is scheduled to begin on December 13, 2016. This trial date would have to be delayed if Armeni is permitted additional time for discovery.

Thus, although any prejudice Armeni will face if entry of default is vacated will not be overwhelming, he will nonetheless face some prejudicial effect. This factor, accordingly, does not count significantly for or against setting aside entry of default.

f. Less Drastic Sanctions

"This court has held repeatedly that requiring a defaulting party to pay the non-defaulting party's fees and costs associated with seeking entry of default and default judgment is an appropriate and less drastic sanction than entry of default judgment." *Dalton*, 2016 WL 1337329, at *7.

There does not appear to be any reason why this sanction would be inappropriate in the present case. BSI has accordingly met this factor of good cause.

g. Weighing of Factors

BSI failed to plead a meritorious defense, did not act with reasonable promptness, and was personally responsible for the delay of its responsive pleading. Although in the present case the prejudice factor of good cause does not significantly cut for or against setting aside entry of default, lesser sanctions are available, and BSI has not engaged in any dilatory action, these factors do not outweigh the others. BSI has accordingly failed to demonstrate good cause. *See*

*Dalton*, 2016 WL 1337329, at *7.

Because BSI has failed to show that it was improperly served or that it satisfies the requirements of good cause, its motion to vacate entry of default will be denied.

B. ARMENI'S MOTION FOR DEFAULT JUDGMENT

According to Rule 8(b)(6) of the Federal Rules of Civil Procedure, "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." In such case, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished)).

In his complaint, Armeni alleges three claims against BSI. First, he avers that BSI violated 15 U.S.C. §1681s-2(b)(1)(A) by "failing to fully and properly investigate [Armeni's] disputes." (Compl. ¶ 59). Second, Armeni claims that BSI violated §1681s-2(b)(1)(B) by "failing to review all relevant information provided by the consumer report agencies." *Id.* ¶ 73. Finally, Armeni avers violation of §1681s-2(b)(1)(C) and (D) by BSI's failure to correctly note that Armeni's account was in dispute.

1. Armeni's §1681s-2(b)(1)(A) Claim

Section §1681s-2(b)(1)(A) requires that "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall conduct an investigation with respect to the disputed information." "In order to establish a *prima facie* case of liability under [§1681s-2(b)] the plaintiff must show that the furnisher first received notice under 1681i(a)(2) and then failed to discharge the duties imposed by the statute." *Downie v. Revco Disc. Drug Centers, Inc.*, No.

3:05-cv-00021, 2006 WL 1745063, at *8 (W.D. Va. June 19, 2016).

The statute does not impose upon a furnisher of credit information merely "a minimal duty . . . to briefly review [its] records to determine whether the disputed information is correct," but rather requires "some degree of careful inquiry by creditors." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004). Creditors are required to "act with thoroughness, diligence and competence in the handling of consumer credit disputes." *Jones v. Experian Info. Solutions, Inc.,* No. 1:11–cv–826, 2012 WL 2905089, at *4 (E.D. Va. July 16, 2012).

Here, Armeni has pled sufficient facts to support a finding that BSI violated §1681s-2(b)(1)(A). In his complaint, Armeni claims that he "had previously disputed the debt directly to BSI on numerous occasions." (Compl. ¶ 86). Furthermore, he alleges that in reviewing credit disputes, "all BSI does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that BSI already had reported to the [credit reporting agencies]." *Id.* ¶ 67. Thus, Armeni has pled sufficient facts to support a finding that BSI both had notice of his dispute and that BSI failed to investigate this dispute with the level of thoroughness and diligence required. Accordingly, Armeni has stated a claim for relief under §1681s-2(b)(1)(A).

2. Armeni's §1681s-2(b)(1)(B) Claim

Like §1681s-2(b)(1)(A), a claim arising under §1681s-2(b)(1)(B) requires notice on a furnisher's part as to the existence of an account dispute. *Downie*, 2006 WL 1745063, at *8. The statute requires that a furnisher made aware of such a dispute "review all relevant information provided by the consumer reporting agency." 15 U.S.C. §1681s-2(b)(1)(B).

Armeni contends that BSI ignored the information it allegedly received from Trans Union regarding Armeni's dispute. Instead, BSI merely "regurgitated the same information it had

13

previously reported to Trans Union." (Compl. ¶ 78). In this way, Armeni has stated sufficient facts to support a finding that BSI violated the statute by neglecting to review information provided to it by Trans Union. Accordingly, Armeni has stated a claim under §1681s-2(b)(1)(B).

3. Armeni's §1681s-2(b)(1)(C) and (D) Claim

Section 1681s-2(b)(1)(C) and (D) requires that a furnisher who receives notice of a credit dispute and conducts an investigation about such dispute must "report the results of the investigation to the consumer reporting agency" and, "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis."

Armeni alleges that BSI violated the statute "by publishing BSI's representations within [Armeni's] credit files with Trans Union without also including a notation that the debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency." (Compl. ¶ 83). In particular, Armeni contends that BSI failed to include an "XB code" in its ACDV dispute form signaling that the account was in dispute. *Id.* ¶ 84. Failure to report the existence of a dispute has been held to support a violation of the statute. *See Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008) (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)) ("In sum, given the evidence before it, the jury could reasonably conclude that [defendant's] decision to report the debt without *any* mention of a dispute was 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.'") (emphasis original). Armeni has accordingly pled a sufficient claim under §1681s-2(b)(1)(C) and (D).

Thus, Armeni has sufficiently pled enough facts to support his three claims against BSI.

## IV. CONCLUSION

In sum, BSI has failed to show that it was improperly served or demonstrate good cause to set aside entry of default. Armeni, on the other hand, has pled sufficient facts to support a finding for him on his claims.

Accordingly, I will deny BSI's motion to vacate entry of default, grant enlargement and leave to file a responsive pleading, and oppose entry of default judgment, and grant Armeni's motion for entry of default judgment. The Court will subsequently hold a hearing on the issue of calculating proper damages. Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages).

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __28th__ day of July, 2016.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE