IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| DANIEL ARMENI, | ) | |
| *Plaintiff,* | ) | CASE NO. 3:15-CV-00066 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TRANSUNION LLC, INC., *et al.*, | ) | |
| | ) | By: Norman K. Moon |
| *Defendants.* | ) | United States District Judge |

Before the Court is a motion for reconsideration filed by the remaining defendant, BSI Financial Services, Inc. ("Defendant"). Defendant seeks relief from a default judgment, arguing it has meritorious defenses. Defendant contends the Court clearly erred (or has permitted a manifest injustice) by denying its motion to set aside a clerk's entry of default and by granting Plaintiff's motion for default judgment. The Court will deny Defendant's motion.

Motions for reconsideration are not a chance to urge arguments that could have been (but were not) presented before, yet that is what the motion does. Defendant's attempts to downplay the motion's nature are unavailing. First, Defendant casts the motion as merely supplementing its prior arguments that it had a meritorious defense. But the Court's July 28th opinion explained that Defendant failed to present any evidence about its purported (and unspecified) defenses, instead resting on bald assertions about their existence. Indeed, Defendant argued at the time that it need not even put forth a meritorious defense. Second, Defendant claims it lacked sufficient time to mount its defenses. But before the Court entered default judgment, Defendant had months after it was effectively served; over seven weeks after it had actual notice of the suit; and over five weeks after counsel entered an appearance to create a record of its defenses for consideration by the Court at the default stage. Defendant—despite being represented by counsel—did not do so, nor did it request additional time for that purpose.

1

## PROCEDURAL HISTORY

The factual and procedural history of this case need not be repeated at length, as it was set forth in the Court's opinion of July 28, 2016. (Dkt. 37 at 1-3). In that opinion, the Court rejected Defendant's argument that it was improperly served. (Dkt. 37 at 6-7). For one, Defendant was effectively served on February 8, 2016, a point which it conceded at oral argument. (*Id*. at 6). Thus, its answer was due 21 days later, and its failure to respond warranted entry of default.

As relevant to the instant motion, Defendant previously conceded that it received actual notice of the suit on June 7, 2016, the same day Plaintiff moved for a default judgment. (Dkt. 37 at 9). Defendant's attorney entered an appearance in the case on June 20, 2016. (Dkt. 28). Defendant then moved to set aside the entry of default (and opposed the motion for default judgment) on July 8, 2016. (Dkt. 33). The Court held oral argument and subsequently entered an opinion on July 28, 2016 that denied Defendant's motion and granted Plaintiff's motion. Thus, after Defendant admittedly received actual notice of the complaint against it, 13 days passed before it entered an appearance; 31 days passed before it moved to set aside default; and 51 days passed before the Court entered default judgment.

As to the evaluation of whether good cause existed to justify relief from the entry of default, the Court considered each of the six factors required under Fourth Circuit precedent. It found that three of the factors cut against Defendant (meritorious defense, reasonable promptness, and personal responsibility), two favored it (history of dilatory action and availability of alternative sanctions), and one (prejudice) favored neither party. Defendant now targets the "meritorious defense" factor, which it hopes to flip in its favor.

2

Case 3:15-cv-00066-NKM-JCH   Document 49   Filed 09/22/16   Page 2 of 9   Pageid#: 321

## STANDARD OF REVIEW

In a widely-cited passage, the Eastern District of Virginia has explained that reconsideration is:

> appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). Courts have subsequently distilled the grounds for reconsideration to (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice. *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014). Such motions are disfavored and should be granted "sparingly." *Downie v. Revco Disc. Drug Ctrs., Inc.*, No. 3:05-CV-00021, 2006 WL 1171960, at *1 (W.D. Va. May 1, 2006). That is because their "improper use . . . can waste judicial resources and obstruct the efficient administration of justice." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003).

## ANALYSIS

In opposition to the motion for reconsideration, Plaintiff argues that "Defendant raises several new arguments and defenses that it could have easily raised in its Motion to Vacate/Opposition to Plaintiff's Motion for Default Judgment." (Dkt. 47 at 1). Because the Court agrees, it will deny the motion on procedural grounds.

**I.     Defendant's Arguments Could and Should Have Been Raised Previously**

As the Court recently explained:

> reconsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial "second bite at the apple" to a dissatisfied litigant. It is "inappropriate where it merely reiterates previous arguments." *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 755 F.Supp.2d 738, 744 (W.D. Va.2011). It is not an occasion "to present a better and more compelling argument that the party could have presented in the original briefs," *Madison River,* 402 F.Supp.2d at 619, or to "introduce evidence that could have been addressed or presented previously." *Regan v. City of Charleston, S.C.*, 40 F.Supp.3d 698, 702 (D.S.C.2014). Aggrieved parties may not "put a finer point on their old arguments and dicker about matters decided adversely to them." *Evans v. Trinity Indus., Inc.*, No. 2:15CV314, ⸺ F.Supp.3d ⸺, ⸺, 2015 WL 8331944, at *3 (E.D. Va. Nov. 25, 2015). In sum, "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Duke Energy*, 218 F.R.D. at 474.

*Wootten v. Commonwealth of Virginia*, No. 6:14-CV-00013, 2016 WL 922795, at *2 (W.D. Va. Mar. 10, 2016). Likewise here, Defendant's motion "seek[s] a mulligan" on its motion to set aside entry of default, based on arguments and facts it should have presented on that earlier occasion. *Id*. at *3.

At various points in its moving and reply briefs, Defendant attempts to frame its reconsideration motion as expounding upon the meritorious defenses it (purportedly) set forth before. Defendant now contends that:

- It "explained that it *could* proffer . . . meritorious defenses, including actual and affirmative defenses to Plaintiff's baseless allegations." (Dkt. 44-1 at 2 (emphasis added));

- It "*expands* on the *evidence* proffered in its initial Motion to Vacate." (*Id*. at 5 (emphasis added));

- "*Here*, BSI has more than met its burden of fleshing out several meritorious defenses to Plaintiff's claims." (*Id*. at 17 (emphasis added));

- Defendant "proffered that it *had* meritorious defenses in its Motion to Vacate." (Dkt. 48 at 1 (emphasis added));

- Defendant "alleged in its Motion to Vacate that it *has* 'multiple plausible meritorious defenses' . . ." (*Id*. at 2).

4

These statements overlook the principle that the time to at least minimally articulate its legal defenses and proffer actual evidence (rather than vaguely gesture to their supposed existence) was in its original motion to vacate. But Defendant—despite what it currently says it did in its original motion—did not, in fact, do so.

As the Court stated in *Red Light Management v. Dalton*, on which the July 28th opinion relied:

> "A meritorious defense requires a proffer *of evidence* which would permit a finding for the defaulting party . . . ." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (citing cases). There must be facts to support the defense, not merely conclusory statements. *Burton v. TJX Cos., Inc.*, No. 3:07–CV–760, 2008 WL 1944033, at *3 (E.D.Va. May 1, 2008).

315 F.R.D. 65, 70 (W.D. Va. 2016) (emphasis added). The July 28th opinion concluded that Defendant did "not plead facts to support any meritorious defense." (Dkt. 37 at 8). Rather, Defendant "merely made conclusory statements regarding supposed defenses . . .". (*Id.*; *see also Parks v. Disc. Box & Pallet, Inc.*, No. 5:12CV081, 2013 WL 662951, at *5 (W.D. Va. Feb. 22, 2013) (finding lack of meritorious defense where defendant "offers no facts in its motion," "offers only a rote listing of standard defenses," and "provides no explanation for its list of boilerplate defenses," so "the court has no ability to discern whether they are meritorious or not").[1] Indeed, the point is proven by Defendant's own reconsideration brief, which admits that

---

[1] To be sure, Defendant's motion to vacate the entry of default made several mentions of the catchphrase "meritorious defense." (Dkt. 33-2 at 11-12). But as for the details of those defenses—whether evidentiary or legal—Defendant said only that it:

> is able to proffer multiple plausible meritorious defenses to the Complaint and its allegations in Counts Seven, Eight, and Nine, as well as with regard to the suit overall. . . . [O]n the merits, BSI can proffer meritorious defenses. Further, upon present information, knowledge, and belief, BSI has both actual and affirmative defenses to the FCRA erroneous credit reporting allegations raised in Counts Seven, Eight, and Nine against it in the Complaint.

5

"BSI takes th[e] opportunity *now* . . . to present evidence of a meritorious defense." (Dkt. 44-1 at 5 (emphasis added)).

That statement is somewhat ironic, given Defendant's assertion at oral argument (which the Court rejected, *see* dkt. 37 at 7-8 & n.7) that the "meritorious defense" factor was not even part of the good cause analysis. The statement also belies Defendant's claimed justification for its initial failure: Insufficient time.

## II. Defendant Did Not Lack a Sufficient Opportunity to Present Defenses

Defendant attributes its failure to present its defenses earlier to a purported lack of time. Its briefs state:

- "Unfortunately, in the short time between when it learned of the entry of default and promptly retained counsel, and when it filed the Motion to Vacate, BSI lacked the time necessary to sufficiently develop its additional meritorious defenses and assert them in the motion itself." (Dkt. 44-1 at 2).

- "BSI responded as best it could under the circumstances—but, unfortunately, in the truncated amount of time it had to file its Motion to Vacate, BSI and its prior counsel were not able to fully flesh out certain arguments including those stated more fully in the Motion to Reconsider." (Dkt. 48 at 3).

The Court begins from the premise that 21 days is an appropriate opportunity for a defendant to compose legal arguments and mount an initial factual investigation of the case against it. After all, under Federal Rule of Civil Procedure 12, that is the period after service a defendant has to compose a motion to dismiss or file an answer with defenses that—if unasserted—are waived. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), (b).

As the procedural history above reveals, Defendant had ample time. Thirty-one days passed between June 7th (the day Defendant admitted it received actual notice of the complaint) and the day it filed its motion to vacate. (*See* dkt. 37 at 9; dkt. 48 (Def's Recon. Reply Br.) at 3 ("BSI's efforts began in mid to late June . . .")). Defendant then had another 17 days before the

Court heard oral argument. Indeed, the Court's pretrial order permitted Defendant to file during that period a reply brief—due on July 22nd (*see* dkt. 23 ¶ 7; dkt. 34)—in support of its motion to vacate, but Defendant forewent that opportunity. The Court next held oral argument and, three days later, issued its opinion.[2]

All told, using the 21-day period in Rule 12 as a reasonable benchmark, Defendant had almost two-and-half times as many days (51) to put before the Court actual evidence, legal arguments, or both for why entry of default should be vacated. Although Defendant "seeks reconsideration to prevent manifest injustice" (dkt. 48 at 5), it is not manifestly unjust to expect a represented party with actual notice of a suit to produce—over a seven-week period before the case is submitted for decision—more than bare assertions about the supposed existence of unspecified evidence and legal defenses.

### III. Allegations of Willfulness

Although the Court does not reach the merits, it observes that most of Defendant's substantive arguments are directed to the issue of willfulness; specifically, that the allegations of willfulness in the complaint should not be deemed admitted and cannot support punitive damages.

Under 15 U.S.C. § 1681n(a), willful violations of the Fair Credit Reporting Act ("FCRA") trigger three kinds of damages: (1) actual damages or statutory damages between $100 and $1,000; (2) "such amount of punitive damages *as the court may allow*," and; (3) costs of the suit together with reasonable attorney's fees. (emphasis added).[3] An allegation "other

---

[2] While Defendant requested 14 days to file a responsive pleading *if* its motion to vacate was granted (dkt. 33 at 2; dkt. 33-2 at 1), it never asked for more time to gather information or law about its defenses for consideration at the default stage.

[3] "A showing of malice or evil motive is not required to prove willfulness" under the FRCA. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) (internal

than one relating to the *amount* of damages" is deemed admitted if, as here, a defendant fails to deny it in a responsive pleading. Fed. R. Civ. P. 8(b)(6) (emphasis added). The combination of these provisions presents a question as to the import of default upon allegations of willfulness. Notably, the Court's July 28th opinion is silent on the issue. The accompanying order instructed that a hearing on damages will take place later this year. (Dkt. 38).

Courts routinely deem the allegations of willfulness admitted at the default stage. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *Two Old Hippies, LLC v. Catch the Bus, LLC*, 807 F. Supp. 2d 1059, 1074 (D.N.M. 2011); *King Vision Pay-Per-View Ltd. v. Spice Rest. & Lounge, Inc.*, 244 F. Supp. 2d 1173, 1175-76 (D. Kan. 2003); *H-D Michigan, LLC v. Hannon*, No. CIV. 09-378-P-S, 2010 WL 915206, at *1 (D. Me. Mar. 7, 2010) (compiling cases). The Court sees no reason to depart from this standard practice.

Still, the statute here ties the willfulness of a violation to the *types* of damages available, including punitive damages. Ordinarily, "punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable." *Cutcliff v. Reuter*, 791 F.3d 875, 883 (8th Cir. 2015); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1152–53 (3d Cir. 1990); *see James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) ("As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing.").

Luckily, § 1681n(a)(2) does not require punitive damages, but instead commits the decision to award them to the Court's discretion, *i.e.*, "as the court may allow." *See*, *e.g.*, *Bradley v. 9727 Pulaski, Inc.*, No. CIV. JKB-11-2708, 2012 WL 669048, at *1 (D. Md. Feb. 27,

---

citations and quotations omitted); *see also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 & n.4 (4th Cir. 2008). Willful violations can be based upon a reckless disregard of a statutory duty. *See Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47, 57-59 (2007).

8

2012) (declining to award punitive damages after default in an FCRA case). Thus, although allegations of willfulness have already been deemed admitted so as to trigger the categories of available damages, at the damages hearing the Court must receive evidence and argument about whether to exercise its power (granted by statute) to award punitive damages. The hearing, of course, will also pertain to the amount of actual or statutory damages (whichever Plaintiff pursues) under subsection (a)(1).[4] These tasks are in keeping with Rule 55's command that the Court "may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).

## CONCLUSION

For the reasons above, Defendant's motion for reconsideration will be denied. An appropriate order will issue. The Clerk is directed to send a copy of this opinion and the accompanying order to all counsel of record.

Entered this __22nd__ day of September, 2016.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[4] Subsection (a)(3) permits costs of the action along with attorney's fees. Local Civil Rule 54(a) and Federal Rule of Civil Procedure 54(d) generally govern those topics, and the Court will likely refer the assessment of fees and costs to a magistrate judge once a motion for their determination is filed.

9